Lenk, J.
(concurring, with whom Budd, J., joins). It has been over five years since the stunning misconduct of a rogue chemist at the State’s William A. Hinton State Laboratory Institute (Hinton lab) first came to light. The nature, scope, and adverse consequences of that misconduct on the individuals directly affected, on our system of justice, and on the taxpayers who must foot the bill for this lamentable turn of events are all ably recounted in the court’s opinion, as well as in the dissenting opinion. I write separately to underscore that, in those five years, and despite the time and efforts of so many, we have managed to address fewer than 2,000 of the estimated 20,000 or more cases involving Annie Dookhan-tainted evidence. We cannot go on this way.
Even as we speak, the myriad ripple effects of one woman’s misdeeds continue to afflict the relevant Dookhan defendants, thousands and thousands of whom already have served their time for convictions that we now know to be suspect. As a result of having a prior drug conviction, many of those same people, some of whom may not even know to this day of Dookhan’s fateful role in their lives, may now find themselves unable to get work or housing, obtain or keep needed professional and drivers’ licenses, attend college, receive government benefits, or even stay in this *333 country. Mindful of this, I share the dissenting Justice’s frustration with the unacceptably glacial systemic response to date and join in her view that extraordinary measures are now in order. For reasons explained in the court’s opinion, however, I regard the protocol announced today (Bridgeman II protocol) as promising to be such a measure, but only if implemented in a manner that countenances no further delays. For the protocol to achieve its goals and end this “blight on the integrity of our criminal justice system,” post at 334-335, there must be strict compliance with its stringent timelines and requirements. Only this will forestall the need for a “Bridgeman III” and different measures.
While blame for the difficult situation in which we find ourselves lies solely with Dookhan and the Hinton lab that allowed it to happen — and it cannot be said too many times that fault most certainly does not lie with the prosecutors who, without knowing its tainted provenance, in good faith used the evidence Dookhan created — we consistently have recognized that her misdeeds must be attributed to the government, and that the government must bear the responsibility to put things right. Just as the success of the Bridgeman II protocol will depend on its timely and rigorous implementation, so too will its viability turn, at least initially, on the willingness of the district attorneys promptly to dismiss with prejudice a truly significant number of the roughly 20,000 relevant Dookhan defendants’ cases — at a minimum, those for simple possession in which sentences already have been served. See ante at note 24. Not doing so in the first phase of the protocol will of necessity add to the already staggering human and financial costs of the scandal and risk overloading the already strained public defense system. In this regard, we cannot turn a blind eye to the potential costs of the looming crisis of thus far undetermined magnitude caused in western Massachusetts by Sonja Farak, yet another rogue chemist employed by a State laboratory. And, as to the presumably limited number of remaining cases that the district attorneys decline to dismiss, truly informative notice to the defendants involved, using whatever modes of communication will be effective, is vital to achieving the fair and workable outcome contemplated by the protocol.
Recognizing what Dr. Martin Luther King, Jr., once called “the fierce urgency of now,” we must act swiftly and surely to staunch the damage and to make things as right as we can. The Bridgeman II protocol draws upon the deep roots of our jurisprudence to craft *334 a response that, consistent with fundamental principles, will bring this deplorable episode forthwith to a just resolution once and for all. May it be so.